UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| NICOLE MURRAY, | ) | |
| | ) | |
| | ) | CASE NO.  1:22-cv-00391 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| UNIVERSITY HOSPITALS | ) | |
| CLEVELAND MEDICAL CENTER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

Before this Court is Defendant University Hospitals Cleveland Medical Center's ("UH")
motion for summary judgment (Doc. No. 18) and its motion to strike or, in the alternative,
objections to Plaintiff's affidavit and unverified statements and exhibits (Doc. No. 25).  Both
motions are fully briefed.  (Doc. Nos. 20, 24, 26, 28.)  For the reasons that follow, the Court
GRANTS the motion for summary judgment and DENIES as moot the motion to strike or, in the
alternative, objections to Plaintiff's affidavit and unverified statements and exhibits.

I.   **Statement of Facts**

Between May 2007 and August 2011, Plaintiff Nicole Murray worked at UH as a Patient
Transporter.  (Doc. No. 18-1 at 153, 157-58.)[1]  Plaintiff testified that the position involved,
among other things, lifting patients onto a mobile bed and pushing patients to various locations
in the facility.  (*Id.* at 153.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

1

In March 2011, Plaintiff injured her back while working. (Doc. No. 18-1 at 180-81.) As a result, she was unable to fulfil all Patient Transporter responsibilities without some assistance. (Doc. No. 20 at 313; Doc. No. 21-5 at 421.) She informed her supervisor, Joshua Beers, that she needed an accommodation. (Doc. No. 21-5 at 421.) Beers told Plaintiff to contact human resources, and she did. (*Id.*) In speaking with the human resources department, Plaintiff explained that she needed to be co-assigned another Patient Transporter at all times. (*Id.*) Human resources rejected this request and terminated her employment. (Doc. No. 21-5 at 421; Doc. No. 18-1 at 156.) In accordance with UH policy, upon her termination, Beers stated that he "recommended [Plaintiff] for rehire." (Doc. No. 21-10 at 446; Doc. No. 18-2 at 269; Doc. No. 21-7 at 431.) Also in 2011, Plaintiff received a raise. (Doc. No. 21-13.)

Soon after being terminated, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 18-1 at 156.) She obtained a right-to-sue letter from the EEOC but did not initiate a lawsuit for the alleged discrimination. (*Id.*)

On May 7, 2013, Plaintiff applied for Social Security Disability Insurance ("SSDI"). (*Id.* at 18-1 at 177.) Plaintiff stated her disability onset date was August 27, 2011 – the date of her UH termination. (*Id.* at 153, 177.) The ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with chronic pain syndrome, major depressive disorder, panic disorder without agoraphobia, history of learning disorder, and history of headaches. (*Id.* at 179.) He also concluded that Plaintiff was unable to work as a Patient Transporter. (*Id.* at 180.) He ultimately denied her disability insurance because he determined that Plaintiff could work a less demanding job. (*Id.*) This decision was reviewed and upheld by another court in this District. (*Id.* at 206; Case No. 1:16-cv-02129, Doc. No. 17.)

Plaintiff worked only four months between her UH termination and her deposition in this matter.  (Doc. No. 18-1 at 157, 214.)  Plaintiff's most recent date of employment was in January 2014.  (*Id.*)

In late 2017, Plaintiff applied for six open positions with UH: Switchboard Operator; Operating Room Assistant; Non-Certified Sterile Processing Technician (twice); Patient Transporter; and Customer Service Technician.  (Doc. No. 21-10 at 443-46; Doc. No. 18-1 at 156-57.)  The Switchboard Operator and Operating Room Assistant positions were cancelled and not filled by any candidate.  (Doc. No. 21-10 at 444; Doc. No. 18-1 at 157.)  UH reviewed Plaintiff's applications for the two Sterile Processing Technician openings and the Patient Transporter role.  (*See* Doc. No. 21-10 at 444-45; Doc. No. 18-2 at 270.)  UH declined to interview Plaintiff for these positions because she lacked recent work experience.  (Doc. No. 21-10 at 444-45; Doc. No. 18-2 at 270.)  UH did interview Plaintiff for the Customer Service Tech opening.  (Doc. No. 21-10 at 445; Doc. No. 18-1 at 160; Doc. No. 18-2 at 269.)  The interviewer declined to further consider Plaintiff's candidacy because she believed Plaintiff did not interview well and could not explain her lack of recent work experience.  (Doc. No. 21-10 at 445-46; Doc. No. 18-2 at 271-72.)  Although not selected for a position, Plaintiff was listed as recommended for rehire during this application process.  (Doc. No. 18-2 at 269.)

Plaintiff filed a second claim for SSDI, with an alleged disability date of March 4, 2019.  (Doc. No. 18-1 at 155, 207.)  This claim was granted, and Plaintiff began receiving disability payments in November 2021.  (*Id.* at 155.)

As of October 14, 2022, Plaintiff was neither employed nor seeking to obtain employment.  (*Id.*)

## II. <u>Discussion</u>

### A.  Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A "material" fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (additional citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold*, 369 U.S. 654, 655 (1962); *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes the absence or the presence of a genuine dispute.  *See* Fed. R. Civ. P. 56(c)

4

and (e).  Rule 56 further provides that "[t]he court need consider only" the materials cited in the

parties' briefs.  Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to

establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the Court's role is not to make credibility

determinations or "weigh" conflicting evidence.  *Payne v. Novartis Pharms. Corp.*, 767 F.3d

526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).  "The

ultimate question is whether the evidence presents a sufficient factual disagreement to require

submission of the case to the jury, or whether the evidence is so one-sided that the moving

parties should prevail as a matter of law."  *Payne*, 767 F.3d at 530.

### B.  Disability Discrimination Claims

#### 1.  Overview of Claims

Counts One alleges a violation of Ohio law resulting from UH's failure to accommodate

Plaintiff's disability and its decision not to rehire Plaintiff because of her disability.  (Doc. No. 1

at 6. ¶¶ 45, 47.)  Count Two alleges these same theories of liability under the Americans with

Disabilities Act ("ADA").  (*Id.* at 7, ¶ 52.)  Both parties agree that Ohio courts turn to federal

interpretations of the ADA when scrutinizing disability discrimination claims under Ohio law.

(Doc. No. 18 at 143 n.4; Doc. No. 20 at 314-15 (only citing ADA caselaw for Ohio law claims).)

*E.g.*, *Johnson v. Univ. Hosps. Physician Servs.*, 617 F. App'x 487, 490 n.2 (6th Cir. 2015) ("We

analyze the ADA and Ohio state-law claims together because, in disability discrimination cases,

Ohio courts look to federal regulations and cases interpreting the ADA for guidance in

interpreting Ohio law.").  The two theories of liability raised in these claims – failure to accommodate and failure to hire – are governed by distinct analytical frameworks.  *E.g.*, *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007) (examining a failure to accommodate claim's unique analytical framework).  Accordingly, the distinct theories of liability presented in Counts One and Two are analyzed separately below.

## 2.  Failure to Accommodate

A failure to accommodate disability discrimination claim must be supported by direct evidence.  *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020).  The evidence must establish that the plaintiff is disabled and that she proposed an accommodation that was "objectively reasonable."  *Id.* at 811-12; *Kleiber*, 485 F.3d at 870.  The plaintiff's evidence must also prove that she is "otherwise qualified" for the position despite her disability: "(a) without accommodation from the employer, (b) with an alleged "essential job" requirement eliminated; or (c) with a proposed reasonable accommodation."  *Tchankpa*, 951 F.3d at 811 (quotations and citations omitted).  If demonstrated, the burden shifts to the employer to demonstrate that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.  *Id.*

Plaintiff's failure to accommodate claims fail for two reasons.

*First*, Plaintiff has abandoned these claims.  Sixth Circuit "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."  *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases).

UH moved to summarily dismiss the failure to accommodate claims stated in Counts One and Two and the failure to hire claims also stated in Counts One and Two.  (Doc. No. 18 at 143.)

Plaintiff's opposition brief did not address UH's arguments in support of dismissing her failure to accommodate claims. Plaintiff only opposed the dismissal of her failure to hire claims. [2] (*See* Doc. No. 20 at 314 (stating her claims center on UH's "refusal to hire Plaintiff" and, for no apparent reason, providing two different *prima facie* case standards for failure to hire claims).) Because Plaintiff did not come forth with any evidence to support her reasonable accommodation claims, those claims are summarily dismissed. *See Brown*, 545 F. App'x at 372.

*Second*, Plaintiff conceded she never requested an accommodation for any of the 2017 positions. (Doc. No. 20 at 321 ("Plaintiff does not contend that she requested . . . an accommodation during the hiring process for the six 2017 positions sought.") (emphasis omitted)).) There is no dispute Plaintiff requested an accommodation while employed as a Patient Transporter in 2011. (Doc. No. 21-5 at 421.) But six years passed between her 2011 accommodation request and her applications in 2017. (*Compare* Doc. No. 21-5 at 421 *with* Doc. No. 21-10 at 444.) Plaintiff has neither provided facts nor legal authority from which the Court could conclude that the 2011 accommodation request would have any application to the open positions in 2017. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir.

---

[2] In this section of her opposition brief, Plaintiff inexplicably states that this claim is also about UH's "termination of her employment." (Doc. No. 20 at 314.) But Plaintiff admitted in her deposition that she did not sue UH for her 2011 termination. (Doc. No. 18-1 at 156.) Plaintiff testified that this lawsuit only concerns the positions for which UH denied her applications in 2017. (*Id.* at 160.) Regardless, Plaintiff's complaint does not state a claim about UH's 2011 termination (*see* Doc. No. 1 at 6-8), and she cannot state one for the first time in opposition to summary judgment. *E.g.*, *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (noting that permitting the plaintiff to raise a new claim in response to a summary judgment motion "would subject defendants to an unfair surprise"); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal.").

1998) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation.").

At best, Plaintiff's accommodation is only relevant for the Patient Transporter role. (Doc. No. 21-10 (outlining the five unique positions Plaintiff applied for in 2017).)  But even then, Plaintiff has not established that this accommodation – made in May 2011 – was necessary to accommodate any physical or mental limitations she was experiencing in 2017.  *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008) (holding the plaintiff must provide evidence that a proposed accommodation is "necessary" to address a disabling condition).

Finally, Plaintiff did not attempt to establish that the 2011 accommodation was "objectively reasonable" considering a Patient Transporter's unique responsibilities.  *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) (noting that whether an accommodation is objectively reasonable depends on whether it allows the employee to perform all "necessary functions" of each job); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 & n.10 (6th Cir. 1996) (stating that the employee must explain how the requested accommodation "is reasonable in the sense both of efficacious and of proportional to costs" (quotations omitted)). Plaintiff did not respond to UH's summary judgment motion concerning the reasonable accommodation process – let alone explain whether the 2011 accommodation would permit her to do the job in 2017 or how the 2011 accommodation would be efficient and proportional for the 2017 Patient Transporter role.  (*See* Doc. No. 20.)

Accordingly, UH's motion to dismiss Plaintiff's federal and state failure to accommodate claims is granted.

### 3.  Failure to Hire

When a plaintiff does not have direct evidence of discriminatory animus, she may prove a failure to hire claim with circumstantial evidence.  (*See* Doc. No. 20 at 314-25.)  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The *McDonnell Douglas* burden-shifting analysis applies.  *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).

In the disability discrimination context, a plaintiff has the initial burden of demonstrating a *prima facie* case, which includes proof that (a) the plaintiff was disabled; (b) the plaintiff could perform the essential functions of the job with or without a reasonable accommodation; (c) the defendant knew of the plaintiff's disability; (d) the defendant took an adverse action against the plaintiff; and (e) the plaintiff's position remained open or a non-disabled person replaced the plaintiff.  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008); *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 524 (6th Cir. 2021).  If the *prima facie* case is demonstrated, the defendant must then show that it had a legitimate, nondiscriminatory reason for the adverse action.  *Whitfield*, 639 F.3d at 259.  If the defendant meets this burden, the burden shifts back to the plaintiff to show that the proffered reason was a pretext for discrimination.  *Id.*

Throughout this process, the burden of persuasion remains with the plaintiff to prove that the defendant intentionally discriminated against her because of her disability.  *See* Ohio Rev. Code § 4112.02(A); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  In other words – unlike her failure to accommodate claims – Plaintiff must provide evidence from which a jury could reasonably conclude that UH had discriminatory intent when it terminated her employment.  *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017).

Based on this record before it here, the Court's analysis begins and ends at the *prima facie* case stage.

"To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case." *E.E.O.C. v. Clarksville Health Sys., G.P.*, 617 F. Supp. 3d 844, 855 (M.D. Tenn. 2022) (citing *Banks v. State of Ohio*, No. 94-3866, 1995 WL 118993, at *2 (6th Cir. Mar. 20, 1995)).  UH has demonstrated that Plaintiff could not perform the essential functions of the positions she applied for in 2017, with or without a reasonable accommodation.  In other words, UH has demonstrated that Plaintiff cannot establish the second element of the *prima facie* case: the ability to perform the essential functions of the position.  *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. Updated Apr. 2023) (noting the moving party can meet her initial summary judgment burden by "submitting affirmative evidence negating an essential element of the nonmovant's claim").

*Physical Limitations.*  UH cites to prior testimony about Plaintiff's severe physical limitations.  Plaintiff admitted that her physician testified in 2014 that Plaintiff was only authorized to "lift[] and carry[] five pounds occasionally and less than five pounds frequently due to pain in her left neck and shoulder." [3]  (Doc. No. 18-1 at 154.)  She also remembered telling her physician that she could not pick up "a gallon of milk because it was too heavy."  (*Id.* at 155.)  Plaintiff further acknowledged that her physician stated she could only "stand/walk for

---

[3] Because UH has successfully used this evidence to negate Plaintiff's *prima facie* case, the Court need not consider whether this evidence is also relevant to UH's claims of judicial estoppel and collateral estoppel.  (Doc. No. 18 at 139-43.)  *See Belcastro v. Bank One, N.A.*, No. 05-70570, 2006 WL 1155315, at *7-8 (E.D. Mich. Apr. 28, 2006) (finding that testimony connected to the plaintiff's previous application for social security benefits could be used to negate plaintiff's *prima facie* case, and plaintiff's failure to offer any evidence establishing that she was otherwise qualified for the position necessitated that the court grant the employer summary judgment).

less than one hour[,] could sit for two to three hours[,] and could occasionally reach, pull, push, crouch, kneel, and balance."  (*Id.* at 154.)  For these reasons, Plaintiff did not believe her physician ever "fully released" her to return to work in 2011.  (*Id.*)

UH also cites the district court opinion recommending the ALJ's decision be affirmed, which determined that Plaintiff could not return to work as a Patient Transporter.  (*Id.* at 180.)  And finally, because Plaintiff testified that her physical ailments got progressively worse after 2013, UH argues that this testimony and the district court's prior decision conclusively establish that she was unable to perform the essential functions of the positions for which she applied in 2017.  (*Id.* at 152, 154; *see also* Doc. No. 18 at 144-46.)

*Psychological Limitations.*  UH provides record evidence to support its assertion that Plaintiff was mentally unfit for work in 2017.  (Doc. No. 18 at 145-46.)  Plaintiff testified that she was diagnosed with and still currently suffers from major depressive and schizotypal personality disorders.  (Doc. No. 18-1 at 154.)  She agreed that, in 2014, her doctor stated that she "could rarely interact with others and could not deal with work stress or complete a normal workday without psychological symptom interruption."  (*Id.*)  Plaintiff also testified that her mental health problems have led to multiple suicide attempts.  (*Id.* at 155.)

All in all, this evidence supports a finding that Plaintiff was neither physically nor mentally capable of working, with or without an accommodation, when she applied for the positions in 2017.  A jury could also reasonably make this finding using Plaintiff's testimony that she should have been on SSDI when she applied to the UH positions in 2017 (*id.*) and that Plaintiff only worked for four months after her March 2011 injury (*id.* at 157, 214).

Because UH has come forth with evidence negating the second element of the *prima facie* case, Plaintiff must offer some competent evidence that could be presented at trial showing

that there is a genuine dispute as to a material fact on whether she could perform the essential functions of any of the five positions with or without a reasonable accommodation. *See Anderson*, 477 U.S. at 256.

Plaintiff first directs the Court to Beers' recommendation that she be rehired and the raise UH awarded in 2011. (Doc. No. 20 at 323; Doc. No. 21-13; Doc. No. 21-10 at 446; Doc. No. 18-2 at 269.) To Plaintiff, this evidence demonstrates that she was qualified for all entry-level positions sought in 2017. (Doc. No. 20 at 323.) But Plaintiff must show that she could work in 2017 *despite* her disability – not that she could perform in 2011 before the onset of her disability. *See, e.g.*, *Clarksville*, 617 F. Supp. 3d at 859-62 (examining the qualified prong for a disability discrimination claim). That Beers recommended Plaintiff for rehire in 2011 does not shed any light on Plaintiff's health in 2017, nor does Plaintiff's pay increase in 2011. Moreover, Plaintiff does not confront that she testified that her health has progressively deteriorated since 2011. (Doc. No. 18-1 at 152.)

Plaintiff also asserts that UH's reliance on testimony taken during her 2014 SSDI Hearing is misplaced and that the testimony should not be considered by this Court. To Plaintiff, whether she could work *with a reasonable accommodation* was not relevant during that proceeding. (*See* Doc. No. 20 at 316-17.) Side-stepping her burden by challenging the context in which prior testimony was taken does not satisfy Plaintiff's burden here – she now must provide evidence that she proposed an accommodation that was "objectively reasonable" in 2017. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) ("A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation bears the initial burden of proposing an accommodation and showing that that accommodation is

objectively reasonable." (cleaned up)).  Without any such evidence, Plaintiff has not shown there is a triable issue as to whether she can establish a *prima facie* case.

Having failed to meet her summary judgment burden, UH's motion for summary judgment on Plaintiff's failure to hire claims is granted.

### C.  Retaliation Claims

UH moves for summary judgment on Plaintiff's final two claims, retaliation under Ohio law (Count Three) and the ADA (Count Four).  (Doc. No. 1 at 8-9.)  Again, both parties agree that these claims should be analyzed together.  (Doc. No. 18 at 146 n.5; Doc. No. 20 at 315 (citing Sixth Circuit case analyzing retaliation claims under federal and Ohio law together).) *Allman v. Walmart, Inc.*, 967 F.3d 566, 571 (6th Cir. 2020) ("[R]etaliation claims under Ohio law are analyzed the same way as under federal law.").

### 1.  *McDonnell Douglas* Overview

Plaintiff attempts to prove retaliation using circumstantial evidence, again triggering the application of *McDonnell Douglas*.  *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). *McDonnell Douglas* first places the initial burden on the plaintiff to present a *prima facie* case of retaliation.  *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).  If done, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Burdine*, 450 U.S. at 253.  Should the defendant carry the burden, the plaintiff must prove that the stated justification is pretext for discrimination.  *Id.*  Throughout this process, the burden of persuasion remains on the plaintiff to demonstrate that the defendant intentionally retaliated.  *Id.*; *see also Allen v. Ohio Dep't of Job & Fam. Servs.*, 697 F. Supp. 2d 854, 894 (S.D. Ohio 2010).

13

### 2. *Prima Facie* Case

To establish a *prima facie* case of retaliation, the plaintiff must produce evidence showing that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer*, 743 F.3d at 1046.

UH asserts that Plaintiff cannot produce evidence from which a reasonable jury could find the requisite knowledge and causation elements. (*See* Doc. No. 18 at 146-48.) *Celotex*, 477 U.S. at 325 (holding the movant can meet her initial burden by showing that the opposing party cannot produce admissible evidence to support a material fact). UH notes that Plaintiff's 2011 EEOC charge was her only protected activity. (Doc. No. 18 at 147.) And, to UH, Plaintiff cannot prove any causal connection between this activity and UH's decisions to deny her applications *six year*s later. (*Id.*) Even worse, UH contends, Plaintiff cannot prove that any UH employee reviewing Plaintiff's 2017 applications was aware of the 2011 EEOC charge. (*Id.*)

Plaintiff counters that she engaged in protected activity relevant to this case by participating in the EEOC's conciliation process for the 2011 charge only a few months before UH rejected her for the 2017 positions. (Doc. No. 20 at 326.) Based on this timeline, Plaintiff asserts that courts have allowed plaintiffs to establish the causation element if they can show a lapse of three months or less between the protected activity and the adverse action. (*Id.* at 328.) Regarding the knowledge element, Plaintiff demonstrates that a decisionmaker was aware of her protected activity because she previously requested an accommodation from Beers, and Beers was still the Patient Transporter manager in 2017. (*Id.* at 327.)

14

Plaintiff's effort to establish a *prima facie* case does not withstand scrutiny.  Plaintiff has not proven that Beers – or anyone involved in UH's 2017 hiring process – had any knowledge of her participation in the EEOC's conciliation.  In fact, Beers, who knew of her 2011 accommodation request, is the only person relevant to this dispute who had *any* knowledge of Plaintiff's protected activity.  (*See* Doc. No. 21-5 at 421.)  The only protected activity that Beers knew about, however, cannot sustain a *prima facie* case.  To start, Beers' knowledge is relevant for only one of the five positions Plaintiff was denied.  Regardless, Plaintiff has not provided evidence of a causal link between her 2011 protected activity and UH's decision to reject her 2017 applications.  A six-year gap between the protected activity and the adverse action, as a matter of law, precludes a plaintiff from relying on temporal proximity to establish a causal nexus.  *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676 (6th Cir. 2013) ("Our review of the law shows that multiyear gaps between the protected conduct and the first retaliatory act have been insufficient to establish the requisite causal connection.").  This is fatal to Plaintiff's claim because the only causation evidence she presents is temporal proximity.  (Doc. No. 20 at 327-28.)

With no other causation evidence, Plaintiff has failed to put forth sufficient evidence to support that a triable issue exists with respect to the *prima facie* case.  Nonetheless, the Court will proceed with the remainder of *McDonnell Douglas*.

### 3.  Legitimate, Nondiscriminatory Reason

UH's burden at this stage is far from onerous.  It must "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]."  *Burdine*, 450 U.S. at 255.  Importantly, this does not mean that the employer must "persuade the Court that it was actually motivated by the proffered reasons . . . ."  *Campbell v. Norfolk S. Corp.*, 876 F. Supp. 2d

15

967, 982 (N.D. Ohio 2012) (citing *Burdine*, 450 U.S. at 254).  Rather, the burden is satisfied if

UH simply "explains what [it] has done" or "produces evidence of legitimate nondiscriminatory

reasons."  *Burdine*, 450 U.S. at 256 (citations and quotations omitted); *see also Hartsel v. Keys*,

87 F.3d 795, 800 (6th Cir. 1996) ("It is important to note that the defendant need not *prove* a

nondiscriminatory reason for not promoting [the employee] but need merely *articulate* a valid

rationale.")

UH states that Plaintiff was not hired to fill any of the 2017 positions because the

positions were either cancelled and not filled by any applicant or filled by another applicant with

recent work experience.  (Doc. No. 18 at 137-38.)  In support, UH cites Plaintiff's job

application, representing that Plaintiff's only recent work experience was a cashier position from

October 2013 to January 2014.  (Doc. No. 18-1 at 214.)  UH also relies on Jennifer Pfeifer's

deposition testimony, UH's director of talent acquisition.  (Doc. No. 18-2 at 266.)  Pfeifer

testified that

> in 2017, the candidate labor market was drastically different in that we had a [] very large candidate pool [] that were applying for positions.  In these roles, they are entry level positions, and so I think the criteria, especially, again, given the limited job qualifications, we really relied a lot on job stability or demonstration of length in position.  And as such, looking at the candidates that were considered and/or ultimately selected, those individuals certainly had much more robust or consistent work experience or even previous exposure to a healthcare environment, which would certainly stand out to a recruiter, especially if they had multiple candidates applying to these positions.

(Doc. No. 18-2 at 270.)  With this criterion in mind, Pfeifer stated:

> Ms. Murray worked up until 2011, and then the only other position that she held was three months from October 2013 to January of 2014.  Not having any work history after 2014 and subsequently applying in 2017, I think that would stand out to the recruiter and the recruiter would consider individuals with more recent work history or consistency – or longevity [] – within the positions that they've worked.

(*Id.*)  Pfeifer further testified that the UH employee who interviewed Plaintiff for the Customer Service Tech Position reported that Plaintiff did not explain her lack of recent work experience. (*Id.* at 271-72.)  Lastly, UH cites Plaintiff's testimony that the Switchboard Operator and Operating Room Assistant Positions were cancelled and not filled by any candidate.  (Doc. No. 18-1 at 157, 211.)

UH has provided more than enough evidence to meet its burden.  *See Burdine*, 450 U.S. at 254, 256.  And Plaintiff does not argue otherwise.  (*See* Doc. No. 20 at 325-29.)  In fact, Plaintiff's opposition brief states, "[Plaintiff] applied for six positions since October 2017[,] and she was not selected for any of the positions because she was not the most qualified candidate." (Doc. No. 20 at 313.)

### 4.  Pretext

To prove pretext, the plaintiff may show that the employer's reason for the adverse action either: (a) had no basis in fact, (b) did not actually motivate the employer's actions, or (c) was an insufficient motivator for the employer's actions.  *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).  "The three-part test need not be applied rigidly.  Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).  "Ultimately the plaintiff must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it . . . failed to hire her.'"  *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Chen*, 580 F.3d at 400) (brackets omitted).

Plaintiff presents four arguments that can be reasonably construed as related to pretext.[4] Each is addressed below.

*Lack of Interviews.*  Plaintiff asserts that her recommended-for-rehire status entitled her to an automatic interview whenever she applied for a position at UH.  (Doc. No. 20 at 323.) UH's failure to interview her for all six openings establishes pretext.  (*See id.*)  This argument does not move the needle for three reasons.  First, Plaintiff did not provide evidentiary support for the factual assertion that UH interviews all candidates who are recommended for rehire.  (*See id.*)  As such, this Court cannot consider it at summary judgment.  *Wilson v. Corizon Health, Inc.*, No. 20-1354, 2021 WL 4955260, at *3 (6th Cir. July 26, 2021) ("[T]he nonmovant . . . must designate specific facts showing that there is a genuine issue for trial as supported by affidavits, depositions, answers to interrogatories, and admissions on file . . . .").  Second, as UH highlights in reply (Doc. No. 24 at 472), Pfeifer testified when a recruiter encountered a recommended-for-rehire candidate, they would first review the candidate's resume to determine whether to grant an interview.  (Doc. No. 18-2 at 268; *see also id.* at 279.)  Third, even if there was such a policy, that UH did not interview Plaintiff does not establish that UH's nondiscriminatory reason has no basis in fact, did not actually motivate UH's actions, or was insufficient to motivate UH's actions.  *See Miles*, 946 F.3d at 888.

*Shifting Rationales.*  Plaintiff argues that there is an inconsistency between UH's 2019 justification for rejecting Plaintiff and the justification UH proffered at summary judgment.

---

[4] Had the Court analyzed pretext for Plaintiff's failure to hire claim, it would have reached the same conclusion for the same reasons described below.  This is so because Plaintiff combined her retaliation and failure to hire pretext arguments.  (*See* Doc. No. 20 at 315-16 (merging the *McDonnell Douglas* analysis for both the failure to hire and retaliation claims; *see also id.* at 328 (only analyzing pretext in a separate section from her discussion of the failure to hire and retaliation claims).)

18

(Doc. No. 20 at 324.)  In 2019, UH responded to an EEOC request for additional information and explained it did not hire Plaintiff because she was not among the most qualified candidates.  (*Id.*) Plaintiff highlights that the 2019 response made no mention of her lack of recent work experience – UH's current legitimate, non-discriminatory reason.  (*Id.*)

In the Sixth Circuit, "an employer's shifting termination rationales are evidence that the proffered rationale may not have been the true motivation for the employer's actions."  *Miles*, 946 F.3d at 890.  But Sixth Circuit caselaw also provides that offering "*additional*, non-discriminatory reasons that do not conflict with the one stated at the time of discharge does not constitute shifting justifications."  *Id.* at 891 (quoting *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012)) (emphasis in original; quotations omitted).

Plaintiff has not shown that UH has proffered shifting rationales for its hiring decisions. Articulating at summary judgment that Plaintiff's lack of recent work experience led to her rejection is not inconsistent with UH's 2019 position that it rejected Plaintiff because she was not the most qualified.  Instead, it is entirely *consistent* with Pfeifer's testimony that one of the most important criteria for assessing qualification level was whether the applicant had a consistent, robust recent employment history.  (Doc. No. 18-2 at 270.)

*Subjective Rationales.*  To Plaintiff, that her interviewer only offered an amorphous, subjective reason for rejecting her candidacy – that she "did not interview well" – establishes pretext.  (Doc. No. 20 at 328-29.)  This argument mischaracterizes the interviewer's review of Plaintiff's interview.  The interviewer not only offered her subjective opinion that Plaintiff interviewed poorly but supported this conclusion with the objective fact that Plaintiff did not provide a reason why she lacked recent work experience.  (Doc. No. 21-10 at 445-46; Doc. No.

19

18-2 at 271-72.)  Even so, "a subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one."  *Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 751 (S.D. Ohio 2009) (quotation and citations omitted) (granting summary judgment to an employer when the employer stated that it terminated an employee, in part, because of her "failure of day to day decision making" and "lack of personal ownership"), *aff'd,* 385 F. App'x 486 (6th Cir. 2010); *see also Wortham v. Integrated Health Servs.*, 302 F. Supp. 2d 854, 859  (N.D. Ohio 2004) ("The use of subjective criteria in evaluating articulated reasons is not *per se* illegal in rebutting a plaintiff's *prima facie* case.") (granting employer summary judgment after employer justified termination because the employee "was not a team player and a leader").

*Hiring Someone with a Criminal History.*  In a last-ditch effort to prove pretext, Plaintiff highlights that UH hired someone for the Patient Transporter position with a theft conviction. (Doc. No. 20 at 324-25.)  This is a non sequitur.  Again, Plaintiff's burden is to show that UH's determination that she lacked recent work experience has no basis in fact, did not actually motivate UH's actions, or was insufficient to motivate UH's actions.  *See Miles*, 946 F.3d at 888. It is unclear how this fact accomplishes that goal – especially considering that Plaintiff's exhibit showing the hired candidate's 2014 misdemeanor theft conviction actually bolsters UH's legitimate, nondiscriminatory reason.  The candidate notably worked as a disability facility manager from December 2012 through October 2017.  (Doc. No. 21-9 at 439-40.)  The Court is aware of no authority that an employer's decision to hire a qualified candidate with a criminal history opens the employer to liability, and it has previously rejected such an assertion.  *See Sharqawi v. Kirby Co.*, – F. Supp. 3d – , 1:20-cv-00271, 2023 WL 3726572, at *18 n.15 (N.D. Ohio May 30, 2023).

Having failed to show that a jury could find that she can establish a *prima facie* case or pretext, the Court grants UH's motion for summary judgment on the retaliation claims.

### D. Motion to Strike

On May 2, 2023, UH filed a motion (Doc. No. 25) seeking to strike (1) unsupported statements in Plaintiff's opposition brief, (2) statements in Plaintiff's affidavit that contradict her prior testimony, and (3) unverified exhibits attached to Plaintiff's opposition. (*Id.* at 483.) Plaintiff's opposition brief is largely devoid of citations to the record. The Court has already addressed these deficiencies. "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Furthermore, and as shown above, when Plaintiff occasionally cites to the record, these citations do not support her ability to withstand UH's summary judgment motion. UH's motion is denied as moot.

### III. <u>Conclusion</u>

For the reasons stated above, the Court GRANTS UH's motion for summary judgment and DENIES as moot its motion to strike or, in the alternative, objections to Plaintiff's affidavit and unverified statements and exhibits. This case is dismissed.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: December 18, 2023